**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold Tucker MATLOCK, Defendant-
Appellant.**

**No. 73-1646.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 27, 1973.

Decided Jan. 23, 1974.

John W. Palmer, Dyersburg, Tenn., for defendant-appellant; E. T. Palmer (Court-appointed), Dyersburg, Tenn., on brief.

Thomas F. Turley, Jr., U. S. Atty., Glen Reid, Jr., Asst. U. S. Atty., Western District of Tennessee, Memphis, Tenn., on brief, for plaintiff-appellee.

Before EDWARDS and McALLISTER, Circuit Judges, and JOINER,\* District Judge.

PER CURIAM:

The defendant Harold Tucker Matlock was convicted on three counts of an indictment involving bank robbery. He claims three grounds of error in support of his request for reversal.

■ During the course of the trial, witnesses for the government were asked to wait in a designated room, a part of the Marshal's offices, until they were called to testify. The defendant was detained in a cell adjacent to the Marshal's office, and on two occasions was brought in handcuffs from that cell to the courtroom through the room in which the witnesses were waiting. This was a direct route to the courtroom but not the only route. On one occasion an unidentified person spoke and said "there goes Matlock."

It is contended that the action of the Marshal in bringing the defendant through the room in which the government's witnesses were waiting amounts to a "one man line up without counsel and violates the defendant's constitutional rights." United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

We think that under the circumstances in this case no prejudice has been shown for the acts were not "so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] was denied due process of law." Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Nothing in the record indicates that the confrontation was arranged by the government. United States v. Furtney, 454 F.2d 1 (3rd Cir. 1972).

In addition, five of the government's identification witnesses based their identification of the defendant on clear recollection of the defendant's appearance at the time of robbery and a clear explanation of opportunity at that time to acquire facts sufficient to make an identification. The independent origin of the identification of the defendant

---

\* The Honorable Charles W. Joiner, United States District Judge, Eastern District of Michigan, sitting by designation.

and significant other evidence connectng the defendant with the crime makes the inadvertent confrontation in the witness room without prejudice to the defendant. United States v. De Bose, 433 F.2d 916 (6th Cir. 1970).

■ This court, however, does not condone arrangements that as a matter of course require a defendant to be paraded in front of identification witnesses while he is being brought to the courtroom. All possible steps must be taken to avoid confrontation which may on some occasions prejudice defendants and lead to identification based on the confrontation rather than on independent recollection. In this case, however, the total circumstances surrounding the chance encounters and the strength of the identification witnesses do not require us to reverse this case. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 704 (1966).

During the trial, counsel for the defendant indicated a desire to interview an eye witness. In the presence of defendant's counsel, the government's attorney informed the witness that "he did not have to talk unless he wanted to." The defendant contends this action impeded his right of investigation.

■ Witnesses are neither the property of the government nor of the defendant. Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966). Instructions to a witness not to cooperate with the other side or to talk to lawyers for the other side would not be proper, but a witness is free to talk or not unless compelled by order of the court. The action of the government's lawyer is quite unlike that of the judge in Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), and the government's agent and lawyer in United States v. Thomas et al., 488 F.2d 334 (6th Cir. 1973). In these cases the intrusion prevented the party from interrogating his witnesses in court. Here the witness was called and was cross examined by defendant's counsel. The only advice given was the appropriate statement to the effect that the witness need not talk unless he wanted to. Advising him of his "right not to submit to the interview did not deny the defendant a fair trial." United States v. White, 454 F.2d 435 (7th Cir. 1971).

■ The three counts on which the defendant was convicted arose out of a single bank robbery. Count I involved the robbing of a bank by use of force and violence, in violation of Title 18 U.S.C. § 2113(a). Count II involved the taking and carrying away with intent to steal money in custody of the bank, in violation of Title 18 U.S.C. § 2113(b). Count III involved the committing of an offense of bank robbery and while doing so assaulting a bank employee and putting his life in jeopardy, in violation of Title 18 U.S.C. § 2113(d).

The District Court initially sentenced the defendant to concurrent terms of 10 years on Counts I and II, to be followed by a subsequent sentence of 15 years on Count III, making a total period of imprisonment of 25 years. Apparently concerned about an attack on the sentence because the counts may have merged and overlapped, seventeen days later, while the defendant was still confined in the Shelby County Jail, the District Court filed an Amended Judgment and Commitment sentencing the defendant to 10 years on Counts I and II and 20 years on Count III, making all sentences run concurrently for a total period of imprisonment of 20 years. It is contended by the Appellant that the re-sentence increased the period of confinement as to Count III and was not valid because the defendant had already begun to serve his sentence.

Although Rule 35 of the Federal Rules of Criminal Procedure gives the court power to correct an illegal sentence "at any time" and he may correct a sentence imposed in an illegal manner "within 120 days after service is imposed", this court has held that a District Court cannot increase a sentence after the defendant has started to serve it even though the increase merely carries out the intention of the court at the time of the

original sentence. United States v. Adams, 362 F.2d 210 (6th Cir. 1966). The time the defendant starts to serve the sentence is clearly stated in Section 3568 of Title 18 of the United States Code to be "the date on which he is received at such jail or other place of detention" to await transportation to the place his sentence is to be served. In the ordinary case, therefore after sentence of commitment to the custody of the Attorney General, the Judge loses the power to increase the sentence at the point in time the defendant is held in custody for the purpose of carrying out the sentence, whether that involves screening the defendant or awaiting transportation for the service of the sentence. This, of course, has nothing to do with how jail time is computed in the service of the sentence. The same section makes clear that all "time spent in custody in connection with the offense or acts which the sentence was imposed" is to be credited on the sentence. 18 U.S. C. § 3568.

The government contends that there are additional facts in this case making inapplicable *Adams* and the indicated application of 18 U.S.C. § 3568. The government asserts that at the time of the first sentence and until and after the resentence, the defendant was being held in jail without bond for violation of parole or for trial on another charge. Under these facts the holding in jail after the sentence would not be "to await transportation to the place his sentence is to be served." 18 U.S.C. § 3568. If he was held for a purpose other than the judgment of commitment in this case, the sentence had not commenced on the date of re-sentence and the increase in the term of sentence was not improper.

The record available to us is not sufficient to determine if these facts are true. The case is remanded to the District Court to determine whether or not there was an independent basis for defendant's custody and to dispose of the case in accordance with this opinion.