**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Leroy MONROE, Defendant–Appellant.**

**No. 86–4066.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1987.

Decided Nov. 16, 1987.

Julia Casey (argued), Casey & Slaybod, Toledo, Ohio, for defendant-appellant.

Patrick J. Foley (argued), Asst. U.S. Atty., Toledo, Ohio, for plaintiff-appellee.

Before MARTIN and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Leroy Monroe appeals from his jury convictions for armed bank robbery in violation of 18 U.S.C. § 2113(d) and for carrying a firearm during the commission of a violent crime in violation of 18 U.S.C. § 924(c). Monroe argues that his convictions must be reversed because (1) he was not brought to trial within the time limits established by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.;* (2) the trial court erred in overruling his motion to strike the courtroom identifications of him by two witnesses who had seen him in custody from a waiting room

for witnesses prior to trial; and (3) the evidence is insufficient to support the jury's verdict. For the following reasons, we affirm the judgment of the district court.

## I.

On May 7, 1986, a federal grand jury indicted Leroy Monroe and Allen Bruce Calmese for the April 14, 1986 robbery of the Huntington National Bank in Toledo, Ohio and for carrying dangerous weapons, i.e., handguns, during the commission of the robbery. On May 9, 1986, each was arraigned before a United States Magistrate and entered a plea of not guilty. At the arraignment, the magistrate granted the parties three weeks in which to investigate, research, prepare and file any pretrial motions. At that time, the parties agreed that the three-week period would be excludable under the Speedy Trial Act in the interest of justice.

On May 30, 1986, the last day of the three-week period, Calmese filed a motion to suppress as well as an *ex parte* application for psychiatric/psychological examination. On June 4, 1986, the court ordered Calmese to undergo a psychiatric evaluation to determine his competency to stand trial, and on June 11, 1986, the court stayed further proceedings on Calmese's suppression motion pending the outcome of the psychiatric evaluation. On July 31, 1986, the magistrate conducted a hearing on Calmese's motions, and on the following day issued a report and recommendation suggesting that the district court overrule Calmese's suppression motion and find Calmese competent to stand trial.

On August 18, 1986, Calmese withdrew his plea of not guilty and substituted a plea of guilty to the armed bank robbery charge. The court scheduled Monroe's trial for October 20, 1986. On that day, a jury was impanelled and Monroe's trial commenced. The following evidence was among that introduced at trial.

Two tellers at the Huntington National Bank at the time of the robbery identified Monroe at trial. First, Patricia Hauter positively identified Monroe at trial as the man who jumped the counter, demanded money, and then fled the bank. She stated that she got a good look at his face because as he approached her he was attempting to pull a ladies' nylon stocking over his face. On direct examination, Hauter admitted that she had seen Monroe pass the room in which she and other witnesses were waiting prior to trial. On cross-examination, she responded that she could not tell that he was wearing jail clothing or that he was in custody. She added that he simply glanced in the room as he and others passed by. On redirect, she stated that no one had presented him to her as the defendant.

Second, Petra Rapton, also a teller at the bank during the robbery, positively identified Monroe at trial as the man who had robbed the bank. She stated that Monroe had not yet pulled the nylon stocking over his face when he reached her window. Rapton also admitted on cross-examination to having seen Monroe pass her in the hallway prior to trial. She stated that she and Hauter merely commented that the man who glanced in the room might well be Monroe, but that he passed too quickly to be sure. On redirect examination, Rapton reasserted her positive identification of Monroe as the man who robbed the bank on April 14, 1986.

Sergeant Ulysses Howard of the Toledo Police Department testified that he responded to an alarm at the Huntington Bank on April 14, 1986. Upon arriving at the bank, he learned that two black males driving a green Oldsmobile with temporary tags had robbed the bank. He added that at 6:20 p.m. on that same evening he spotted two black males in a green Oldsmobile with temporary tags approximately five miles from the bank. He stated that when he attempted to stop the car, it sped away, and he gave chase. He added that following the chase during which the passenger leaped from the car he apprehended Calmese and searched the car. He testified that he found a blue windbreaker as well as a blue-nylon gym bag containing $2,386 in cash, two blue-knit stocking caps,

two brown-nylon stockings, and two .38 caliber revolvers in the trunk.

Detective Kermit Quinn testified that as he was patrolling the downtown Toledo area on April 14, 1986, he learned that the passenger in the car Howard was pursuing had leaped from the vehicle near the Collingwood exit of I–75. He also learned that the passenger was wearing a green army jacket and dark pants. Quinn added that upon arriving in the area he spotted a black male who matched that description lying face down behind a fence. Quinn identified Monroe as the individual he apprehended on that evening.

Monroe's co-defendant, Calmese, also testified at Monroe's trial. He recounted how he and Monroe had driven a green Delta 88 with temporary tags from Cleveland to Toledo on April 14, 1986 to rob a bank. He stated that upon arriving in Toledo, he and Monroe purchased a blue-nylon gym bag in which to put the money and a pair of women's knee-high stockings to use as masks. He testified that they then entered the Huntington Bank where he guarded the lobby door and Monroe vaulted the counter to collect money from the tellers. He stated that later that afternoon when a police cruiser attempted to stop them they sped away. He explained that during the chase Monroe leaped from the car and fled. He stated that about one hundred yards later he abandoned the car and fled on foot but was immediately apprehended by Sergeant Howard. Calmese identified the nylon gym bag, his revolver, and Monroe's revolver as those used in the robbery. He also identified a blue-nylon windbreaker, a nylon stocking, and a knit-stocking cap as clothing worn by Monroe during the robbery.

At the conclusion of the evidence, Monroe moved the court for a mistrial, or in the alternative to strike the in-court identifications of Monroe by bank tellers Hauter and Rapton. Monroe argued that the identifications were tainted because Monroe had been exhibited to the prospective witnesses in jail clothing and in the custody of United States Marshals prior to trial. Overruling the motions, the court submitted the case to the jury which found Monroe guilty of both armed robbery and carrying a firearm during the course of a violent crime.

On November 20, 1986, Monroe appeared in court with counsel and was sentenced to a twenty-year term of imprisonment on the bank robbery charge and a five-year term of imprisonment on the dangerous weapon charge, to be served consecutively. On that same day, Monroe filed this timely appeal.

## II.

### A.

Under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, a criminal defendant must be brought to trial within seventy days of the later of either the filing of an indictment or information against him, or his first appearance before a judicial officer of the court in which the charge is pending. *United States v. Richmond*, 735 F.2d 208, 211 (6th Cir.1984). Section 3161(h) provides for the exclusion of various periods of time from the calculation of this seventy-day period. *Id.* Among the periods of time excluded by section 3161(h) are the following:

.　　.　　.　　.　　.

(7) A reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted.

(8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of jus-

tice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

█ In the present case, because Monroe's first appearance before a judicial officer, his arraignment, occurred subsequent to his indictment, the countable time under the Speedy Trial Act began to run from the day of his arraignment, May 9, 1986. *See Richmond*, 735 F.2d at 211. In calculating the seventy-day time limit, the day of arraignment is excluded. *Id.* Thus, the first day of the seventy-day period was May 10, 1986. Moreover, the last day of the period in question in the case was October 20, 1986, the day on which Monroe's trial commenced since commencement of trial marks the end of the countable time under the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(1); *Richmond*, 735 F.2d at 211.

The principal issue in this case is whether there is sufficient excludable time within the one hundred and sixty-four days between Monroe's arraignment and the commencement of his trial to bring the case within the seventy-day limit established by the Speedy Trial Act. Both Monroe and the government agree that the sixty-three days from August 19, 1986, the day following Calmese's guilty plea, through commencement of Monroe's trial on October 20, 1986, must be included in the calculation of the seventy-day period. Monroe, however, argues that the remaining one hundred and one days must also be included in the calculation. Specifically, he contends that delays caused by a continuance granted by the magistrate and pretrial motions filed by co-defendant Calmese were unreasonable and therefore chargeable against the government. The government responds that the continuance granted by the magistrate from May 10, 1986, through May 30, 1986 is excludable under section 3161(h)(8)(A) as an "ends of justice" delay, and that the period from May 31, 1986, through August 18, 1986, is excludable under section 3161(h)(7) of the Act as a reasonable delay resulting from Monroe's joinder for trial with co-defendant Calmese. We agree with the positions asserted by the government in this case.

As indicated above, section 3161(h)(8)(A) of the Act excludes from the seventy-day calculation continuances granted by the court in the interests of justice. "By its terms this section requires the district court to grant an 'ends of justice' continuance only upon the basis of findings that the continuance serves the ends of justice and to set forth its reasons for granting [such] continuance on the record, either orally or in writing." *Richmond*, 735 F.2d at 214–15. The Act additionally lists specific factors the court must consider in granting an "ends of justice" continuance. 18 U.S.C. § 3161(h)(8)(B). One such factor considers, among other things, whether the failure to grant a continuance will deny defense counsel "reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(8)(B)(iv).

█ In the present case, the magistrate properly set forth his reasons for finding that the continuance served the "ends of justice." At Monroe's May 9, 1986 arraignment, the magistrate specifically stated that he would grant the parties a three-week continuance in which to investigate, research, prepare and file any pretrial motions. Such considerations certainly are contemplated by section 3161(h)(8). Because the record reflects that the court made the proper findings at the time it granted the continuance, the time from May 10, 1986 through May 30, 1986, was properly excludable from the seventy-day speedy trial calculation. Further, Monroe cannot now complain about the exclusion of this time from the calculation. At the arraignment, his counsel specifically consented to the exclusion of this time in the interest of justice and thereby waived any objections thereto. *See, United States v. Matsushita*, 794 F.2d 46, 50 (2d Cir.1986).

█ Next, as outlined above, section 3161(h)(7) of the Act provides for an exclusion for "[a] reasonable period of delay when the defendant is joined for trial with co-defendant as to whom the time for trial has not run and no motion for severance has been granted." This court, in *United*

States v. Holyfield, 802 F.2d 846, 848 (6th Cir.1986) (per curiam), *cert. denied,* —— U.S. ——, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987), held that, "under section 3161(h)(7) an exclusion as to one defendant applies to all co-defendants." We went on to find in *Holyfield* that the delay occasioned by the co-defendant was properly excludable under section 3161(h), and that the delay was reasonable under section 3161(h)(7). Accordingly, the exclusion applied to all co-defendants.

In the instant case, appellant apparently concedes that the delay occasioned by co-defendant Calmese's pretrial motions was properly excludable as to Calmese under section 3161(h). The only question raised by appellant is whether the period of delay was reasonable under section 3161(h)(7).

In determining whether the delay attributable to a co-defendant is reasonable, courts "are guided by the purpose Congress intended to serve when it enacted section 3161(h)(7)." *United States v. Dennis,* 737 F.2d 617, 621 (7th Cir.), *cert. denied,* 469 U.S. 868, 105 S.Ct. 215, 83 L.Ed.2d 145 (1984). *See also, United States v. Otero–Hernandez,* 743 F.2d 857 (11th Cir.1984); *United States v. Novak,* 715 F.2d 810 (3d Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984). The legislative history of this section demonstrates a strong Congressional preference for joint trials and an intention that delays attributable to the joinder of defendants be liberally excluded. *Novak,* 715 F.2d at 814. Further, the purpose of this section is to insure that the Speedy Trial Act does not alter the present rules governing severance of co-defendants by forcing the government to prosecute the defendants separately or be subject to a speedy trial dismissal motion. *Otero–Hernandez,* 743 F.2d at 858–59. "Congress thus explicitly 'recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice [feeling that] the efficiency and economy of joint trials far outweighed the desirability of granting severance where the criterion was simply the passage of time.' " *Id.* at 859 (quoting *United States v. Varella,* 692 F.2d 1352, 1359 (11th Cir.1982), *cert.*

*denied,* 464 U.S. 838, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983)). In light of these Congressional goals, we do not believe the eighty-day delay in this case was unreasonable because it was necessary to insure a joint trial. Further, Monroe at no time moved to sever his trial from Calmese, and, in addition, Monroe failed to allege any substantial prejudice resulting from the delay.

Based upon the foregoing, the twenty-one-day delay from May 10, 1986, through May 30, 1986 caused by the continuance to allow the parties to investigate, research, prepare and file any pretrial motions, is properly excludable as an "ends of justice" delay pursuant to section 3161(h)(8)(A) of the Act. Moreover, the eighty-day delay from May 31, 1986, through August 18, 1986, caused by the filing of co-defendant Calmese's pretrial motions, the hearings on those motions, and the period in which those motions were under advisement is properly excludable as to Monroe pursuant to section 3161(h)(7). The remaining sixty-three days, from August 19, 1986, through October 20, 1986, are, as the parties concede, properly includable in the seventy-day calculation. Accordingly, Monroe was brought to trial within the seventy-day limit established by the Speedy Trial Act.

### B.

■ Monroe asserts that the trial court erred in admitting into evidence the court room identifications of him by bank tellers Rapton and Hauter. Monroe claims their having viewed him, in custody and in jail clothing, shortly before trial was so unnecessarily suggestive and conducive to mistaken identification that he was denied due process of law.

This court addressed a similar contention in *United States v. Matlock,* 491 F.2d 504 (6th Cir.), *cert. denied,* 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100 (1974). In *Matlock,* government witnesses were asked to wait in a designated room until they were called to testify. During their wait, the defendant who was detained in a nearby cell was brought to the court room through

the room in which the witnesses were waiting. On one occasion, a witness stated, "there goes Matlock."

On these facts this court held that,

under the circumstances of this case no prejudice has been shown for the acts were not 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] was denied due process of law.' *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Nothing in the record indicates that the confrontation was arranged by the government.

*Matlock*, 491 F.2d at 505. In so holding, the court additionally relied on the independent origin of the identification of the defendant and the significant other evidence which connected the defendant with the crime. *Id.* at 505–06.

As in *Matlock*, nothing in the record in this case indicates that the government arranged the confrontation between Monroe and bank tellers Rapton and Hauter. Rather, Rapton testified that she merely opened the door of the room in which she and other government witnesses were waiting because the room had grown too warm. In addition, Rapton and Hauter each testified that Monroe had not yet pulled the nylon stocking over his face when he took the money from their stations. Each woman testified that she got a good look at Monroe at the time of the robbery. The independent origin of the identifications of the defendant and significant other evidence connecting the defendant with the crime make the inadvertent confrontation in the witness room without prejudice to the defendant.

### C.

Finally, Monroe contends that the evidence is insufficient to support his conviction for bank robbery in violation of 18 U.S.C. § 2113(d). Specifically, Monroe argues that the government failed to establish beyond a reasonable doubt that he was the individual who perpetrated the bank robbery in this instance.

In reviewing Monroe's conviction, this court may not reverse the jury's verdict if there is substantial evidence to support it. *United States v. Chandler*, 752 F.2d 1148, 1151 (6th Cir.1985); *United States v. Stone*, 748 F.2d 361 (6th Cir.1984); *United States v. Levinson*, 405 F.2d 971, 985 (6th Cir.1968), *cert. denied*, 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744, *reh'g denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed. 2d 124 (1969). This court must construe the evidence in the manner most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Chandler*, 752 F.2d at 1151; *United States v. Green*, 548 F.2d 1261, 1266 (6th Cir.1977).

The evidence in this case is more than adequate to support the conviction. At trial, Monroe's co-defendant Calmese testified that he and Monroe planned and perpetrated the robbery in this case. Calmese detailed how Monroe, wearing a blue-nylon windbreaker and a blue-knit stocking cap with a ladies' nylon underneath it, vaulted the bank's counter and took money from four tellers. He added that within several hours of the robbery, as he and Monroe were leaving Toledo in his green Delta 88 with temporary tags, they were stopped by police but fled. He testified that during the chase Monroe leaped from the car. Calmese then identified the jacket, knit cap, nylon stocking, gun and nylon gym bag used by Monroe during the robbery.

In addition, at trial bank tellers Hauter and Rapton positively identified Monroe as the individual who robbed the bank on April 14, 1986. Each woman additionally stated that she got a good look at Monroe because, as he approached her and demanded money, he had not yet pulled the nylon stocking over his face.

Moreover, Sergeant Howard testified that as he chased two black males in a green Oldsmobile with temporary tags, one black male wearing a green army jacket jumped from the car near the Collingwood exit of I–75. Detective Quinn then testified that, responding to Howard's call for assistance, he apprehended a black male

near the Collingwood exit of I–75. He added that the black male, whom he identified as Monroe, was wearing a green army jacket and was soaking wet at the time he was arrested and that a creek separated the area from which the black male fled the car to the area in which Monroe was found hiding. Viewed in the light most favorable to the government, the evidence in this case, clearly is adequate to support Monroe's bank robbery conviction.

Accordingly, we AFFIRM the judgment of the district court.