884 F.2d 580
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John F. CAMP, Defendant-Appellant.
 No. 88-3551.
 United States Court of Appeals, Sixth Circuit.
 Sept. 11, 1989.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and ANNA DIGGS TAYLOR,* U.S. District Judge.
 PER CURIAM:
 
 
 1
 Defendant John F. Camp appeals his jury conviction for forcibly impeding and resisting federal officers engaged in the performance of their duties, in violation of 18 U.S.C. Sec. 111. Camp challenges the sufficiency of the evidence and the judge's instructions to the jury. We affirm.
 
 I.
 
 2
 In March 1985, the defendant and his wife were being investigated by the Internal Revenue Service (IRS). During the next approximately eleven months, the defendant was contacted on several occasions by Revenue Officer Russell Sneary in an effort to collect tax which was due and owing. After the Camps refused to relinquish payment voluntarily, Sneary placed a levy on Mr. Camp's wages. On April 23, 1986, Camp telephoned Sneary to complaint about the wage levy, stating that it was causing him mental problems and that he "had to do something" before he shot a member of his family. On April 25, 1986, Camp again telephoned Sneary and said that he might have to shoot a member of his family in order to collect the insurance so that he could pay the tax. Camp also asked Sneary, "why hasn't someone shot you?"
 
 
 3
 Sneary contacted the Internal Security Division of the IRS because he felt his safety or the safety of others might be in jeopardy as a result of his efforts to collect the tax owed by the Camps. Inspector John Doyle contacted Camp at his home on June 10, 1986 to advise him that it is a federal crime to threaten or interfere with IRS officers in the performance of their duties. Camp initially indicated to Doyle that IRS personnel had nothing to fear, but later qualified that statement by saying, "unless they bring a battleship to my house" or "unless they try to steal my property." After further questioning by Doyle, Camp stated that if IRS personnel attempted to seize his property for the payment of taxes he would shoot them. Camp went on to say "if Sneary sets foot on my property I will shoot him."
 
 
 4
 On April 30, 1987, Camp appeared at the Ottawa County Court of Common Pleas to meet with George Fabian, the court's probation officer and bailiff. Camp told Fabian that he wanted to see a judge in order to obtain an order restraining the IRS from collecting his back taxes. Fabian explained that the only Common Pleas Judge in that county was out of the city and that, in any event, the judge lacked the authority to order the IRS to cease collecting taxes. Camp indicated that if the IRS continued to "harass" him and his family he would "shoot the Feds." Fabian called the County Sheriff's Department and a special agent from the IRS in Toledo in order to report Camp's behavior and statements.
 
 
 5
 Sneary telephoned the Camps on May 4 and 5, 1987, in a last-ditch effort to persuade them to enter into a voluntary payment plan. They both refused to enter into any kind of voluntary payment agreement. Accordingly, on June 12, 1987, Sneary sought and obtained a court order authorizing him to enter the Camps' premises in order to seize certain assets for payment of back taxes. Those assets included a 1986 Bayliner boat, a boat trailer, a 1950 Harley-Davidson motorcycle, a 1974 Honda motorcycle, and a 1980 Chevrolet pickup truck. The warrant also authorized members of the Internal Security Division to accompany Sneary in his seizure efforts.
 
 
 6
 On the morning of June 15, 1987, Sneary and his group manager, together with Inspectors from the Internal Security Division, representatives of the Ottawa County Sheriff's Office, and two tow-truck operators, met at an area near the Camp residence. At approximately 8:30 a.m., the inspectors and Sheriff's deputies were placed in separate areas around the Camp residence. As three of the inspectors approached the main door, Deputy Sheriff Weidner called out to Mr. Camp and asked if he could speak to him. Inspectors Doyle and Blankenship approached the main door displaying their credentials and identifying themselves as federal agents. Camp then locked the front door and lowered the blinds on some of the windows. The inspectors knocked on the main door and called out to Camp indicating that they had a court order authorizing them to enter the premises. Camp responded by saying that he had a gun and that "if you break in, I will shoot you."
 
 
 7
 While the inspectors were attempting to persuade Camp to come out of the house, Doyle received a radio transmission from Inspector DeGiovanni-Bowden who was stationed some 400 yards to the east of the Camp residence. The inspector reported that she saw, through her binoculars, John Camp exit the east side door of the residence carrying a long rifle or shotgun. Camp remained outside the residence for only a brief period and then reentered the house. Camp repeatedly called out to the inspectors telling them that they had no authority to enter. For the second time, he stated "I have a gun, I will shoot you." After this second threat, Doyle observed about three inches of a barrel of a firearm through a small window in the main door. The inspectors then withdrew from the area to meet again with Sneary and his supervisor. Sneary decided the prudent thing to do would be to retreat and not attempt the seizure of Camp's property at that time.
 
 
 8
 On the following day, June 16, 1987, Camp was arrested and his residence searched pursuant to a warrant. As a result of that search, five firearms were seized consisting of two .22 caliber handguns, one semi-automatic handgun, one 12 gauge shotgun, one .22 caliber rifle, and several hundred rounds of ammunition.
 
 
 9
 A federal grand jury returned a one count indictment against Camp, charging him with forcibly assaulting, resisting, opposing, impeding, and intimidating officers of the IRS while they were engaged in the performance of their duties. See 18 U.S.C. Sec. 111.
 
 
 10
 The defendant's first jury trial began on January 26, 1988, in the United States District Court for the Northern District of Ohio. After all the evidence in the case had been submitted and the jury had begun deliberations, one of the jurors became ill and could not continue. Accordingly, a mistrial was declared. The second jury trial began on April 5, 1988, and concluded on April 7, 1988 when the jury returned a verdict of guilty.
 
 
 11
 Camp was sentenced to three years imprisonment, six months of which was to be served at a community treatment center with the remainder of the sentence of imprisonment suspended. The defendant also was to be placed on probation for five years. Camp now appeals.
 
 II.
 
 12
 After both sides presented their evidence at trial, the district court instructed the jury, in part, as follows:
 
 
 13
 Two essential elements are required to be proved in order to establish the offense charged in the indictment:
 
 
 14
 First; that the defendant forcibly, as to each of the following, assaulted, resisted, imposed, impeded, intimidated and interfered with Officers of the United States Department of the Treasury, Internal Revenue Service, while such officers were engaged in the performance of their duties; and,
 
 
 15
 Second; that the defendant did such acts willfully.
 
 
 16
 The term "forcible assault" means any willful attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so, and includes any intentional display of force that would give a reasonable person cause to expect immediate bodily harm even though the threat or attempt is not actually carried out and the victim is not actually injured.
 
 
 17
 The defendant complains that this instruction was inadequate because it did not make clear to the jury what could be considered forcible. Camp requested a different jury instruction, which the court declined to deliver. According to the defendant, "[t]his greatly prejudiced Appellant's case because without it the jury did not know that merely to frustrate an officer in the performance of his duty was not sufficient to violate the statute."
 
 
 18
 We find this contention with regard to the jury instructions to have no merit. The court's instruction did not state that any act would suffice to prove that Camp forcibly assaulted, resisted, imposed, impeded, intimidated, and interfered with the IRS officers on the day in question. Rather, the jury was told that the force had to be of such a nature as "would give a reasonable person cause to expect immediate bodily harm," that the defendant had to have the apparent present ability to inflict that harm, and that the force employed by the defendant could include a threat to injure, even if the threat was not carried out.
 
 
 19
 The jury instructions delivered in this case were patterned on an instruction from Burke v. United States, 400 F.2d 866 (5th Cir.1968), cert. denied, 395 U.S. 919 (1969), in which the court approved an instruction using the same factors set out in Camp's trial. See id. at 867-68. The challenged instruction is virtually identical to Sec. 42.04 of Devitt & Blackmar, Federa. Jury Practice & Instructions (3d Ed.1977), which was approved in United States v. Nerone, 563 F.2d 836, 849 (7th Cir.1977), cert. denied, 435 U.S. 951 (1978). See also, United States v. Latimer, 415 F.2d 1288, 1289 (6th Cir.1969) (threat of present force sufficient to sustain conviction for resisting and impeding arrest with a deadly weapon).
 
 
 20
 The appellant relies on United States v. Cunningham, 509 F.2d 961 (D.C.Cir.1975), in arguing that the district court's instruction in this case was improper. The Cunningham court simply noted "that not all failures to cooperate with federal agents are within the statute's prohibition, and that some measure of presently applied force is required." Id. at 963. That court went on to say that:
 
 
 21
 threats of the future use of force are not enough ... nor is mere deception of a federal agent ... nor, presumably, would be the mere refusal to unlock the door through which federal agents sought entrance.
 
 
 22
 Id. In the present case, the jury was properly instructed that a forcible assault can include a threat to inflict injury when that threat is coupled with an apparent present ability to do so, including an occasional display of force such as would cause a reasonable person to expect immediate bodily harm. Cunningham does not preclude the type of instruction used in this case, and we find no error in this regard.
 
 III.
 
 23
 The appellant also contends that the evidence was insufficient to support the jury's verdict of guilty, but the record shows otherwise. After the IRS personnel and a deputy sheriff clearly identified themselves and indicated that they had a court order authorizing them to enter Camp's residence, the defendant responded by closing the blinds, locking the door, and threatening to shoot if the officers attempted to enter the house. Camp then exited the residence through a side door, carrying a rifle or shotgun, before reentering the house. Camp called out to the officers a second time stating that he had a gun and would shoot the officers if they did not retreat. One of the officers then observed the barrel of a firearm just inside a small window of the main door of Camp's residence. The officers accordingly retreated without seizing any property after they concluded that any attempt to execute the seizure might precipitate a shoot-out. We do not know where on the premises the motorcycle, truck, and other items were located, but they would not have been in Camp's home.
 
 
 24
 Camp's threats to shoot the federal officers could have caused a reasonable person to expect immediately bodily harm even though the threat was not actually carried out. Camp was in the position and had the ability to carry out his threat. The officers were forced to retreat without making the seizure. As prior decisions of this court have recognized, threats of immediate bodily harm are sufficient to support a conviction under 18 U.S.C. Sec. 111. Latimer, 415 F.2d 1289 (1969). In view of the deference to be accorded the jury's weighing of the evidence, United States v. Monroe, 833 F.2d 95, 101 (6th Cir.1987), we find that the evidence of record is more than sufficient to sustain the conviction.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation