946 F.2d 896
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mario GONZALEZ, Defendant-Appellant.
 No. 90-5587.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1991.
 
 Before KEITH, BOYCE F. MARTIN, Jr., Circuit Judges, and TAYLOR, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant Mario Gonzalez ("Gonzalez") appeals his January 2, 1990, jury verdict and April 11, 1990, sentence for distribution of cocaine and conspiracy to distribute cocaine. For the reasons set forth below, we AFFIRM.
 
 I.
 
 2
 Gonzalez was charged in eight counts related to alleged unlawful drug-related activities. He was tried jointly with James E. Campbell ("Campbell") by jury trial in December 1989. Count I charged Gonzalez with conspiring with Campbell to distribute and to possess with the intent to distribute cocaine from around September 1988 through April 1989. The jury found Gonzalez guilty on Count I.
 
 
 3
 Counts IV, V, VI, VIII and IX were substantive distribution counts relating to transactions on specific dates. Gonzalez was convicted on all but Count VIII of these charges. Counts X and XI were weapons counts. The government dismissed Count XI before trial and Gonzalez was acquitted on Count X.
 
 
 4
 In April 1990, Gonzalez was sentenced to 262 months imprisonment on Count I, 220 months on Count IV and 240 months on each of the remaining counts, with the sentences to run concurrently.
 
 II.
 
 5
 Gonzalez came under governmental scrutiny for suspected unlawful drug activities around September 1988 as part of an undercover investigation. The investigation was prompted by Shannon Ladd ("Ladd"), who contacted the Metropolitan Police Department in Nashville, Tennessee, to volunteer to assist the police in any investigation against Campbell. Thereafter, Ladd worked in an undercover capacity for a joint investigation between the Metro Police Department and the United States Drug Enforcement Administration.
 
 
 6
 According to Ladd's trial testimony and the testimony of police officers working with Ladd, Gonzalez participated in several drug transactions during the course of the investigation. Gonzalez admits that he engaged in illegal drug distribution activities, but challenges his conviction on several of the substantive charges and the conspiracy charge. Gonzalez argues on appeal that the evidence was insufficient to support the jury verdict on Counts I, IV, V and VI.
 
 
 7
 The jury verdict must be sustained if there is substantial evidence to support it. See United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983). In addition, the evidence must be viewed in the light most favorable to the government. See United States v. Monroe, 833 F.2d 95, 101 (6th Cir.1987). With this in mind, we will first discuss the substantive counts on which Gonzalez was convicted. For each of the substantive counts, Gonzalez was charged for violating 21 U.S.C. § 841 or 845, which relate to possession, distribution or manufacture of controlled substances, and for violating 18 U.S.C. § 2, which charges an aider or abettor to a substantive crime as a principal.
 
 
 8
 The first substantive count, Count IV, charged that on or about September 21, 1988, Gonzalez distributed and caused to be distributed cocaine. The evidence of activities on that date was as follows. Ladd testified that on September 21, 1988, he obtained $2,000 from Officer Johnny Lucas ("Officer Lucas") to purchase cocaine. Ladd contacted Campbell and met him at an agreed location in Nashville, Tennessee. Gonzalez was with Campbell at this meeting. Ladd gave the $2,000 to Gonzalez, who passed it to Campbell. Campbell then gave Ladd instructions on where to pick up the cocaine. Ladd followed Campbell's instructions and obtained one ounce of cocaine.
 
 
 9
 The next count, Count V, charged Gonzalez for events that occurred on September 26, 1988. Ladd testified that on that date he again contacted Campbell to purchase cocaine. Campbell was again accompanied by Gonzalez. On this occasion, Ladd complained to Campbell that he was having difficulties with Bobby Minchey ("Minchey") who acted as a middleman in arranging meetings between Ladd and Campbell. Campbell informed Ladd that they would deal directly rather than through Minchey. Ladd gave $2,000 to Campbell in exchange for the cocaine.
 
 
 10
 Finally, Count VI charged Gonzalez for activities on September 28, 1988. Ladd again arranged to purchase cocaine from Campbell on this date. Although Ladd testified that he was unsure whether Gonzalez was present when Ladd paid Campbell for the cocaine, he testified that Gonzalez was present when Ladd and Campbell discussed the purchase. Gonzalez was also present when Campbell directed Ladd on where to pick up the cocaine.
 
 
 11
 Reviewing the evidence in the manner most favorable to the government, we conclude that there is substantial evidence that Gonzalez aided and abetted the distribution of cocaine on each of the above dates. We have previously held that "to be found guilty of the crime of aiding and abetting a criminal venture, a defendant must associate himself with the venture in a manner whereby he participates in it as something that he wishes to bring about and seeks by his acts to make succeed." United States v. Knox, 839 F.2d 285, 294 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989). In addition, we agree with the First Circuit that a single occasion may support a conviction for aiding and abetting if the surrounding circumstances lead to a reasonable inference that the defendant must have been a knowing participant in the criminal venture. See United States v. Lema, 909 F.2d 561, 570 (1st Cir.1990).
 
 
 12
 Gonzalez' presence during various transactions between Ladd and Campbell for the sale of cocaine provided a basis upon which the jury could have reasonably concluded that Gonzalez aided and abetted each of the illegal sales. Gonzalez' presence certainly indicated a knowledge of the transactions. Furthermore, the jury could reasonably infer from the evidence that Gonzalez' presence at multiple steps of the transactions was not merely coincidental. Rather, the jury reasonably concluded that Gonzalez was a participant who desired that the transactions succeed. We hold that there was substantial evidence to support the jury verdict on each of these substantive counts.
 
 
 13
 Gonzalez argues next that there was insufficient evidence to support his conviction under Count I. Count I charged Gonzalez with conspiring with Campbell to distribute and to possess with the intent to distribute cocaine. The conspiracy charge related to activities from around September 1988 through April 1989.
 
 
 14
 Gonzalez argues that the evidence showed that there were two, unrelated criminal episodes; one conspiracy involving activity in the fall of 1988, and another conspiracy involving activity in the spring of 1989. In addition, Gonzalez avers that evidence of the latter conspiracy was not related to the conspiracy alleged in Count I. Accordingly, he argues that evidence of events in the spring of 1989 resulted in a material and fatal variance.
 
 
 15
 The jury implicitly rejected Gonzalez' argument that there were two, unrelated criminal episodes. The jury concluded that there was a single conspiracy between Gonzalez and Campbell. The issue of whether the evidence supports the finding of a single or multiple conspiracies is a question of fact to be resolved by the jury. United States v. Hughes, 895 F.2d 1135, 1140 (6th Cir.1990). Therefore, our review of this issue is limited to determining whether there was substantial evidence to support the jury verdict. We conclude that there was.
 
 
 16
 In arguing that there were two distinct criminal ventures, Gonzalez relies on the fact that there were several different individuals involved in the 1988 transactions and the 1989 transactions. Gonzalez contends that the only evidence connecting the ventures of 1988 and 1989 was the testimony of Jeffrey Smith ("Smith"). Smith testified that during drug transactions in 1989, Gonzalez referred to Campbell as his "partner." Smith also stated that he once accompanied Gonzalez when he went to meet Campbell. There was additional testimony that Gonzalez directed Smith to purchase cocaine in Florida from Gonzalez' brother, who had also supplied cocaine to Campbell for over six years.
 
 
 17
 In proving a conspiracy, it is unnecessary to show that each conspirator participated in every phase of the criminal enterprise. Id. Nor does a single conspiracy become multiple conspiracies simply because each member of the conspiracy does not know every other member, or because each member does not know of or become involved in all of the activities in furtherance of the conspiracy. See United States v. Rios, 842 F.2d 868, 873 (6th Cir.1988), cert. denied, 488 U.S. 1031 (1989). Moreover, in order to withdraw from a conspiracy, a conspirator must show that he acted to defeat or disavow the purpose of the conspiracy. See United States v. West, 877 F.2d 281, 289 (4th Cir.), cert. denied, 110 S.Ct. 377 (1989).
 
 
 18
 The mere fact that there were different individuals primarily involved in the fall of 1988 activities and those in the spring of 1989 does not conclusively establish that there were two separate ventures. Gonzalez does not dispute that there was sufficient evidence to show a conspiracy between himself and Campbell in 1988. Although there was no evidence that Campbell directly participated in activities in 1989, nor was there evidence that he ever disavowed the purpose of the conspiracy. In addition, Gonzalez continued to refer to Campbell as his partner. Therefore, the jury verdict finding a single, continuing conspiracy is supported by the evidence. We affirm that verdict.
 
 
 19
 Gonzalez argues next that he was denied his fifth amendment right to trial because the charges at trial were based on a defective indictment. Gonzalez claims that he was indicted based on false testimony by Officer Lucas and this amounted to prosecutorial misconduct. We find no merit in this argument.
 
 
 20
 While Officer Lucas admitted to giving incorrect testimony to the grand jury, there is no evidence that the prosecution deliberately misled the grand jury. All of the cases cited by Gonzalez in which the court recognized that a defective indictment might provide grounds for relief involved deliberate action by the prosecution. See, e.g., United States v. Adamo, 742 F.2d 927 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985); United States v. Estepa, 471 F.2d 1132 (2nd Cir.1972). We certainly do not equate mistaken testimony during grand jury proceedings to deliberate prosecutorial misconduct.
 
 
 21
 Moreover, the Supreme Court has stated that "an indictment returned by a legally constituted nonbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment." Lawn v. United States, 355 U.S. 339, 349 (1958). Gonzalez was given a full trial before a jury and any discrepancy between the grand jury testimony and the trial testimony could be pointed out to the jury. Therefore, we do not believe that Gonzalez' fifth amendment rights were violated based on the defective indictment.
 
 
 22
 Finally, Gonzalez challenges his sentence on various grounds. We need not discuss Gonzalez' sentencing challenges to the extent that they are based on his challenge to the jury verdict since we affirm Gonzalez' conviction. We also reject his other challenges.
 
 
 23
 Gonzalez first argues that his base offense level should have been based on the quantity of cocaine which he purchased, rather than the quantity after he "re-rocked" the cocaine. We disagree. The penalty provisions of 21 U.S.C. § 841 specifically provide that the weight of a controlled substance refers to the weight of any mixture or substance containing a detectable amount of the controlled substance. See 21 U.S.C. § 841(b)(1). Therefore, we conclude that the district court correctly determined Gonzalez' offense level based on the quantity of substance which he possessed after the cocaine was "re-rocked."
 
 
 24
 Gonzalez contends next that he should not have been assessed additional points because Counts V and VI were committed within 1,000 feet of a school. See 21 U.S.C. § 845(a). He claims that this enhancement was added only after the government was unable to negotiate a guilty plea and was therefore vindictive. Gonzalez also avers that the purpose for this enhancement provision is to protect schools and school age children. He claims that there was no evidence of a threat to either. In addition, these transactions occurred within 1,000 feet of a school simply because Campbell owned a home in the vicinity of a school and, therefore, the enhancement should not apply.
 
 
 25
 First, we find it completely irrelevant that the illegal drug transactions only occurred within 1,000 feet of a school because Campbell's home was located nearby. We absolutely and unequivocally reject the implicit argument that there is an exemption for drug sales transacted out of one's home. Furthermore, we have previously held that even if a defendant is unaware that a school is within 1,000 feet of a drug transaction, the sentence enhancement of § 845(a) may apply. See United States v. Cross, 900 F.2d 66, 69 (6th Cir.1990). The rule is straightforward and merely requires the finding of an objective factor--that the transaction occurred within 1,000 feet of a school. That finding is undisputed in this case. Moreover, we have never held that there must be evidence of an explicit threat in order to apply § 845(a). Finally, we find no merit in Gonzalez' contention that the government acted vindictively in charging him. Evidence on the record indicates that this enhancement was added as a result of newly discovered evidence. Therefore, we affirm the sentence enhancement pursuant to § 845(a).
 
 
 26
 Gonzalez' next argument is that the sentence enhancement for his being an organizer or leader of a criminal activity is not supported by the evidence. Based on our review of the evidence, we do not find the district court's factual determination to be plain error. Therefore, we affirm the imposition of an additional two points for Gonzalez' role in the offense.
 
 
 27
 Gonzalez finally argues that the district court committed error by failing to reduce his sentence by two points for his acceptance of responsibility. However, the evidence clearly shows that Gonzalez accepted only partial responsibility for his involvement in the conspiracy. The district court held that this partial acceptance of responsibility did not justify a reduction. We find no abuse in this determination.
 
 III.
 
 28
 For the above stated reasons, we AFFIRM the January 2, 1990, jury verdict and April 11, 1990, sentence by the Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation