951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wendell A. BARNES, Defendant-Appellant.
 No. 91-5602.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1991.
 
 Before KEITH and RYAN, Circuit Judges, and ALDRICH, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant-appellant Wendell A. Barnes ("Barnes") appeals his conviction for bank fraud in violation of 18 U.S.C. § 371, falsifying bank records in violation of 18 U.S.C. § 1005 and conspiracy to commit bank fraud. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 Barnes was indicted on August 15, 1990, on 11 counts for an alleged bank fraud scheme at the Union Planters Bank ("Union Planters") in Chattanooga, Tennessee. Barnes and co-defendant Wanda R. Wallace ("Wallace") allegedly engaged in the fraudulent scheme from around September 1986 through February 1987. On November 21, 1990, following a four-day jury trial, both Barnes and Wallace were convicted on each of the 11 counts charged in the indictment.
 
 
 3
 Following the jury verdict, Barnes moved for a judgment of acquittal notwithstanding the verdict or, alternatively, for a new trial. Both motions were denied. On February 19, 1991, he was sentenced to four years of incarceration. Barnes then filed a timely notice of appeal. On appeal, he challenges his conviction on Count one, charging him with conspiracy; and Counts two, four, six, eight and ten, charging him with the underlying offense of bank fraud.
 
 
 4
 The underlying facts of this case are as follows. Barnes owned and operated a business in the Chattanooga, Tennessee area, and maintained business and personal bank accounts at Union Planters. While banking at Union Planters, Barnes regularly wrote "bad checks"; i.e., checks for which he lacked funds to cover. The branch manager, Frank Hales ("Hales"), approved the "force payment," or payment by the bank, of several of the checks, with the understanding that Barnes would repay the bank by a subsequent deposit.
 
 
 5
 Barnes' co-defendant, Wallace, worked under Hales at Union Planters and also had the authority to approve the force payment of customers' checks. Around September 1986, Hales allegedly instructed Wallace to cease covering bad checks for Barnes, but Wallace continued to force pay several checks written by Barnes. As a result of Wallace's unapproved orders to force pay checks written by Barnes, the bank suffered a loss of approximately $30,000. Investigation of Barnes' accounts also revealed a number of unusual transactions orchestrated by Wallace, such as juggling funds between his personal, payroll and general business expense accounts. There was testimony that Wallace even assisted Barnes when he filled out checks for which both Wallace and Barnes knew there were insufficient funds to cover. In addition, Barnes regularly visited Wallace at Union Planters to discuss his account.
 
 
 6
 According to trial testimony, Wallace and Barnes were personal friends. The exact nature of their relationship is unclear, but neither party denies that they had a personal relationship in addition to their business relationship at Union Planters.
 
 II.
 
 7
 Barnes challenges his conspiracy and bank fraud convictions on the basis that there was insufficient evidence to support the jury verdict. We must sustain the jury verdict if there is substantial evidence to support it. United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983). Moreover, we must view the evidence in the light most favorable to the government. United States v. Monroe, 833 F.2d 95, 101 (6th Cir.1987).
 
 
 8
 Barnes first challenges his conviction for conspiring with Wallace to defraud Union Planters. He claims that the evidence was insufficient to show that he had any conspiratorial intent to defraud. Barnes correctly points out that the government had the burden of proving that Barnes had the "deliberate, knowing, specific intent to join [a] conspiracy." United States v. DeSimone, 660 F.2d 532, 537 (5th Cir.1981). We believe that the government's evidence at trial met this burden and was sufficient to support the jury verdict.
 
 
 9
 Barnes benefitted from all of the underlying transactions for which he was charged because Union Planters provided payment on checks which Barnes had written but lacked funds to cover. There was evidence that the bank manager, Hales, had approved of such transactions for a period of time. As noted, however, around September 1986, Hales told Barnes that this practice would cease. Hales also informed Wallace that bad checks written by Barnes should no longer be covered by Union Planters. Nonetheless, Wallace continued to order force payment of Barnes' bad checks.
 
 
 10
 Barnes claims that he was unaware that Wallace was acting without authority when she ordered force payment of his checks after September 1986. He argues that Union Planters' had covered his checks on numerous occasions, and he continued to believe that these transactions were authorized. Although Barnes was explicitly told by Hales in September 1986 that this activity would have to cease, he claims that such "threats" were made by Hales on several occasions and yet Hales had continued to approve force payment of Barnes' checks. Therefore, Barnes claims that he lacked knowledge that Hales actually intended to or did stop approving the force payment of Barnes' checks around September 1986. Barnes claims that he believed that Wallace retained authority to approve these payments.
 
 
 11
 The government argued at trial that Barnes was, indeed, aware that force payment of his checks was unauthorized. In addition to Hales' testimony that he explicitly told Barnes that Union Planters would no longer honor his bad checks, there was evidence that Wallace, who continued to approve the force payments of Barnes' checks, was Barnes' personal friend. The government argued that she and Barnes acted in concert to fraudulently use Union Planters' funds to cover bad checks written by Barnes.
 
 
 12
 Although Barnes' claim that he lacked knowledge that Wallace's actions were unauthorized is certainly feasible, our role is not to make such credibility determinations. Rather, our review is limited to determining whether the jury's determination was substantially supported by the evidence. We believe that there was sufficient evidence to support the jury verdict in this case. The jury could infer from the relationship between Barnes and Wallace, as well as the numerous and unusual transactions by Wallace on Barnes' behalf, that Barnes asked Wallace to act on his behalf and that he knew the transactions were unauthorized. Accordingly, we affirm the jury verdict finding Barnes guilty of conspiring with Wallace to defraud Union Planters.
 
 
 13
 As to the substantive bank fraud counts, Barnes argues that "the evidence that fails to prove any conspiracy between Mr. Barnes and Mrs. Wallace is also insufficient to sustain Mr. Barnes conviction on the underlying counts of bank fraud." For the reasons stated above, we believe that there was sufficient evidence to sustain Barnes' conspiracy conviction. We hold that this evidence also supports Barnes' conviction for the underlying counts of bank fraud.
 
 II.
 
 14
 For these reasons, we AFFIRM the conviction and sentence by the Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation