DECISION AND JUDGMENT
{¶ 1} Appellant, Jeremiah R., a minor child, appeals the judgment of the Huron County Court of Common Pleas, Juvenile Division, which found him delinquent for committing felonious assault, a violation of R.C. 2903.11(A)(1). Felonious assault, if committed by an adult, constitutes a felony of the second degree. For the following reasons, we affirm. *Page 2 
 {¶ 2} The felonious assault charge arose from a confrontation between Jeremiah and four other persons, including one Daniel Huckleberry and Matthew Garza. On the evening of the confrontation, Jeremiah and his friend Emma Beverly were at Jeremiah's house. Ms. Beverly had a previous "stormy" relationship with Huckleberry; Huckleberry had made several threats of physical violence towards Ms. Beverly.
 {¶ 3} While she was with Jeremiah, Ms. Beverly engaged in several telephone conversations with Huckleberry. During one conversation, Huckleberry expressed a desire to fight Jeremiah. In his testimony, Jeremiah acknowledged taking the telephone and telling Huckleberry something akin to: "If you want some, come get some."
 {¶ 4} Huckleberry and several friends, including Garza, went to Jeremiah's residence, located in a mobile home park. While different participants' versions vary, the trial court found that the mobile home park's residents gave significantly similar versions. According to Holliday, a park resident, Garza, followed by Huckleberry, approached Jeremiah, who was standing in front of his mobile home. Holliday testified that Garza did not have a weapon and made no threatening gestures. Nonetheless, Jeremiah, suddenly and without further provocation than the approach, struck Garza in the head with an aluminum baseball bat.
 {¶ 5} Ms. Tackett, another park resident, heard yelling outside and, upon investigation, saw Garza obviously injured and saw Jeremiah swinging the baseball bat to keep people away from Garza, yelling, "Leave him alone, he got what he deserved." *Page 3 
 {¶ 6} When Valentine, another park resident, attempted to call police for help, Jeremiah attempted to take the phone away and expressed fear that he would get in trouble.
 {¶ 7} Jeremiah admitted hitting Garza in the head with a baseball bat. When asked why he didn't escape back inside his residence when confronted by Huckleberry and his friends, Jeremiah said he thought they would chase him. Jeremiah didn't call the police because didn't think they would come fast enough to protect him. Jeremiah explained that he felt "compelled" to hit Garza with a baseball bat because Garza approached him with his hands up and his shirt off and at least one of Garza's friends was carrying a weapon, nun chucks. Park residents, however, testified that the nun chucks were taken away from the person before Garza approached Jeremiah. Jeremiah also explained that he knew Garza as an experienced fighter and Garza did not back off when Jeremiah warned him.
 {¶ 8} Two assignments of error have been submitted for review:
 {¶ 9} "I. Child-Appellant's adjudication for felonious assault was against the manifest weight of the evidence.
 {¶ 10} "II. The trial court erred to the prejudice of Child-Appellant in denying Child's Motion to Dismiss or erred by allowing the prosecutor of record to continue her appearance in the case."
 {¶ 11} When considering a manifest weight challenge, an appellate court must consider all of the evidence produced at trial. In order to overturn a conviction, the *Page 4 
appellate court must find that the finder of fact clearly lost its way and created a "manifest miscarriage of justice." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. In effect, the appellate court sits as a "thirteenth juror" and may disagree with "the fact finder's resolution of the conflicting testimony." Id. The fact finder must have "clearly lost its way and created such a miscarriage of justice" that the verdict must be reversed. State v. Martin (1983), 20 Ohio App.3d 172, 175. The standard is difficult to meet, since the appellate court should preserve the fact finder's role with respect to issues surrounding the credibility of witnesses." State v. Thompkins, 78 Ohio St.3d at 389;State v. DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 12} Jeremiah focuses his manifest weight argument on the trial court's alleged error in rejecting his self-defense claim. Self-defense is an affirmative defense which does not negate an element of the charge. Rather, a defendant who asserts self-defense seeks relief from culpability by offering a justification for the charge. In reJ.T.W., 12th Dist. No. CA2007-03-057, 2008-Ohio-1476, ¶ 34, citingState v. Martin (1986), 21 Ohio St.3d 91, 94.
 {¶ 13} To prevail on the defense, a defendant must prove each of the following elements by a preponderance of the evidence: (1) the defendant was not at fault for creating the danger; (2) the defendant had a bona fide belief that he was in immanent danger of death or bodily harm and that the only means of escape from the danger use the use of force; (3) the defendant must not have violated any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74, 80; R.C. 2901.05. *Page 5 
 {¶ 14} The trial court did not err in rejecting Jeremiah's claim of self-defense. First, weighing the testimony, it made a reasoned credibility determination that Jeremiah was, at least partially, at fault for creating the danger by provoking a confrontation. Second, it also weighed the testimony to find that Jeremiah had other means of escape from the danger. Jeremiah could have retreated to his residence but did not. Instead, he acknowledged waiting outside his residence for Huckleberry and his company to arrive. Third, given the evidence, the trial court could have concluded that any belief Jeremiah may have had that he was in immanent danger of death or bodily harm was unreasonable. Several mobile home park residents testified that Garza approached Jeremiah in a non-threatening manner and that Jeremiah attacked Garza without provocation.
 {¶ 15} In sum, Jeremiah did not prove, by a preponderance of the evidence, the necessary elements of a self-defense claim. On review of the entire proceedings, Jeremiah's adjudication for assault was not against the manifest weight of the evidence. Therefore, his first assignment of error is not well-taken.
 {¶ 16} In his second assignment of error, Jeremiah argues that the trial court erred in denying his motion to dismiss. He filed the motion alleging prosecutorial misconduct, including allegations that the prosecutor tampered with one witness, intimidated a minor child witness, denied discovery of exculpatory evidence, and obstructed justice. While not citing a particular juvenile rule which provides grounds for a dismissal of the complaint, the motion alleged that, due to witness tampering and misconduct, a fair adjudication was impossible. The trial could held a hearing on the motion. Two *Page 6 
witnesses testified, Emma Beverly and Brandie Barnett. As related infra, Beverly was a witness to the events at issue.
 {¶ 17} Beverly testified that attorney Shenker, of the Huron County Prosector's Office, called Beverly's cell phone and left a message. When Beverly returned the call, Shenker told her that she would like to discuss Beverly's written statement. When Beverly mentioned that she had spoken with attorney Sitterly, Jeremiah's lawyer, Shenker allegedly told Beverly that she was not allowed to speak with him and could "get in trouble" if she did so. Beverly also testified that Shenker told her that "what had happened to [Garza] was pitiful and that he deserves what he gets and he could be blind in one eye."
 {¶ 18} Even though she was afraid because of Shenker's alleged warnings not to speak to Sitterly, Beverly did call him and continued to do so. The court held a brief colloquy with Beverly, and ascertained that she was not inhibited from testifying truthfully at the upcoming adjudication.
 {¶ 19} Since Beverly had her cell phone on speaker and was with Barnett during the phone call, Barnett testified as a witness to the phone call. Her testimony largely reiterated Beverly's testimony relating to the telephone call.
 {¶ 20} At the conclusion of the hearing, the trial court judge explained that he would deny the motion because Jeremiah was unable to demonstrate prejudice from Shenker's alleged conversation with Beverly. Sitterly was able to continue meeting with *Page 7 
Beverly and obtained further relevant information. The trial court ascertained, to its satisfaction, that Beverly would not be inhibited in her testimony.
 {¶ 21} In urging a dismissal on grounds that his fundamental right to fairness was violated, Jeremiah relies on Gregory v. United States
(C.A.D.C., 1966), 369 F.2d 185. In Gregory, the reviewing court found a number of events causing prejudice to the right to a fair trial, including a violation of Brady v. Maryland (1963), 373 U.S. 83, a failure to separate witnesses, and a failure to sever counts in the indictment for separate trials. Also in Gregory, as here, the prosecution told witnesses to the crimes not to speak to anyone unless he was present. The trial court denied two pre-trial motions by defense counsel to compel the witnesses to be interviewed. At trial, the prosecution declined to call the witnesses. Thinking that the witnesses may, therefore, know exculpatory material, defense counsel again pointed out that he had not been able to interview them. The case is silent as to whether defense counsel chose to call the un-interviewed witnesses. In reversing, the appellate court admonished:
 {¶ 22} "Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them. * * * We know of nothing in the law which gives the prosecutor the right to interfere with the preparation of the defense by effectively denying defense counsel access to the witnesses * * *. It is not suggested here that there was any direct suppression of evidence. The defense could not know what the eye witnesses to the events in suit were to testify to or how firm they were in their *Page 8 
testimony unless defense counsel was provided a fair opportunity for interview. In our judgment the prosecutor's advice to these eye witnesses frustrated that effort and denied appellant a fair trial."369 F.2d at 188-189.
 {¶ 23} Subsequent cases to address the issue have held that, to find a violation of the right to a fair trial, the defendant must demonstrate prejudice resulted from the prosecution's interference. State v.Cole (Mar. 22, 1984), 8th Dist. No. 46968; U.S. v. Scott (C.A.6, 1975),518 F.2d 261, 268; U.S. v. Matlock (C.A.6, 1974), 491 F.2d 504, 505. In such cases, prejudice is "a reasonable probability of a different result." State v. Carroll, 6th Dist. No. L-05-1362, 2007-Ohio-5313, ¶ 75.
 {¶ 24} Here, assuming Jeremiah's allegations and Beverly's testimony are true, no prejudice resulted. The accusations are serious, and the possibility that a defense attorney may be hindered from interviewing eye witnesses to crimes is duly disturbing. However, Beverly did, in fact, continue to speak to defense counsel. Further, the trial court ascertained that she would be uninhibited from testifying truthfully at the adjudication.
 {¶ 25} Jeremiah's reliance on Brady v. Maryland and our decisionState v. Carroll, 6th Dist. No. L-05-1362, 2007-Ohio-5313, which relied on Brady, is likewise of no benefit. He alleges only that potentially exculpatory material may have been discovered by unhampered access to Beverly. Beverly, however, was judged ruffled, but unsullied, by the alleged prosecutorial interference. In contrast, the defense counsel inCarroll pointed to clearly exculpatory material and the prosecution's efforts to deny the defense access to the material was manifest in the record. The prejudice to the defendant in *Page 9 Carroll was clear. Id. at ¶ 75-76. Even assuming the allegations' veracity, we can not conclude that Jeremiah suffered any resulting prejudice. Since we find no error in the trial court's decision to deny the motion to dismiss, Jeremiah's second assignment of error is not well-taken.
 {¶ 26} For the foregoing reasons, the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., CONCUR. *Page 1